## GODBEE v. THE STATE.

1. The discretion of a trial judge in overruling a motion for continuance will not be disturbed unless abused.
2. The acts of a de facto officer are valid in so far as they affect the rights of the public and of third persons having an interest in the acts performed by such officer.
(a) The legality of such acts, or the title of such officer, can not be collaterally attacked in a proceeding to which he is not a party.
(b) Accordingly, where a solicitor-general was elected as such of a given judicial circuit, and during his term of office the legislature passed an act transferring one of the counties of his circuit to another judicial circuit, and authorizing him to discharge the duties of solicitor-general in the county so transferred, during the remainder of his term, and

while so acting he wrote and signed an indictment as solicitor-general and presented it to the grand jury, who returned it into court as true, the indictment will not be held void, on demurrer filed by the defendant, on the ground that the solicitor-general who drew and signed it had no authority of law for so doing, but that the solicitor-general of the circuit to which the county was added was the only officer qualified to draft and sign indictments in that judicial circuit, unless he was disqualified or absent.

(c) Nor will it be held that a grand jury sworn by the solicitor-general first mentioned in the preceding note was without authority to perform the functions of a grand jury.

3-6. The charges complained of, which are set out in the 3rd, 4th, 5th, and 6th divisions of the opinion, are not erroneous, for the reasons therein given.

7. The trial judge is a trior as to the competency and disqualification of jurors under the evidence, on the question of bias and prejudice, and his discretion will not be disturbed unless manifestly abused. There was no abuse of discretion in this case.

8. Where, on the trial of one for murder, the evidence authorized a charge on voluntary manslaughter, which was given, and did not authorize a charge on involuntary manslaughter, it is not cause for a new trial that the court charged the jury: "If there is any manslaughter in this case at all, it is voluntary manslaughter," when this charge is taken in connection with the charge on the subject of voluntary manslaughter.

9. The following charge was not erroneous for any reason of which the defendant can complain: "I charge you, in that connection, that a person shall not be found guilty of any crime committed by misfortune or accident, where it satisfactorily appears that there was no evil design or intention, or culpable neglect."

10. The evidence was sufficient to support the verdict.

APRIL 15, 1914. REHEARING DENIED APRIL 27, 1914.

Indictment for murder. Before Judge Hammond. Jenkins superior court. December 18, 1913.

*F. H. Saffold, J. A. Dixon, C. G. Reynolds, Y. E. Bargeron, G. C. Dekle,* and *J. K. Hines,* for plaintiff in error.

*T. S. Felder,* attorney-general, *R. Lee Moore,* solicitor-general, *A. S. Anderson,* and *W. H. Davis,* contra.

HILL, J. Mrs. Edna Godbee was indicted for the murder of Mrs. Florence Godbee. On the trial of the case, the jury returned a verdict finding the prisoner guilty and recommending that her punishment be imprisonment in the penitentiary for life. The defendant made a motion for a new trial, which the court overruled, and she excepted.

1. When this case was called for trial in the court below, the defendant made a motion for a continuance, which was overruled, and the defendant excepted pendente lite. The main grounds in-

sisted on were, that the homicide was of recent occurrence, and that her counsel had not had sufficient or reasonable time to prepare for trial; on account of absent witnesses; and also, that, on account of "various and varied criminal acts happening in Jenkins county within a few days of the trial, a state of high public sentiment exists, and rumors that if somebody was not convicted there was no telling what would become of the county." It appears from the record that the homicide occurred on August 18, 1913, and the motion for a continuance was made on September 11, 1913. In the meantime the defendant had consulted with local attorneys and employed counsel from another county to represent her. It is in-' sisted that on account of other engagements the counsel from outside the county did not have time to properly prepare the defendant's case for trial. It does not appear from the motion who the absent witnesses were (except one), and whether they were within the jurisdiction of the court, or that they had been subpœnaed; nor does the motion set forth in detail the evidence these witnesses would have given had they been present. The record bears testimony that the defendant was ably represented at the trial. All applications for continuances are addressed to the sound legal discretion of the court (Civil Code, § 5724), and it does not appear that its discretion was abused in overruling the motion for a continuance.

2. A demurrer to the indictment was filed in this case, on the following grounds: (a) Because R. Lee Moore, the solicitor-general who prepared the indictment for the consideration of the grand jury, is not the solicitor-general of Jenkins superior court, and has no right or authority to act as solicitor-general, for the reason that he is the solicitor-general of the Middle judicial circuit of the State, and is not the solicitor-general of the Augusta judicial circuit, in which Jenkins county, where the indictment was prepared and found true, now is; that the proper officer, and the only one who could give the indictment legal validity is A. L. Franklin, the only elected and qualified solicitor-general of the Augusta circuit, of which Jenkins county forms a part. (b) That the indictment is void, because the grand jury finding the indictment true amounts to no grand jury, for the reason that the oath administered to the grand jury was not administered by any legal or authorized officer, nor by any person duly and legally appointed by the judge

of the court as solicitor-general pro tem., or for the special purpose of acting for the court in administering the oath; and therefore, there being no legal oath administered to the grand jury, in finding the indictment true it was acting without first being duly sworn. (c) Because that part of the act of the legislature (Acts 1913, p. 64) which provides that R. Lee Moore, solicitor-general of the Middle judicial circuit, shall exercise the rights and perform the duties of solicitor-general in the county of Jenkins, which is now a part of the Augusta judicial circuit, is void, and in violation of par. 1, sec. 11, art. 6 of the constitution of the State (Civil Code, § 6530), which provides that "There shall be a solicitor-general for each judicial circuit, whose official term shall be for four years;" and that part of the act of 1913 is also void as being repugnant to par. 1, sec. 4, art. 1 of the constitution of the State of Georgia (Civil Code, § 6391), which reads as follows: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law," etc.

This presents the most difficult question in the case. The indictment is not void for any of the reasons assigned. The act of the legislature of 1913 (supra) which transferred the county of Jenkins from the Middle to the Augusta circuit authorized the solicitor-general of the Middle circuit "to discharge the duties of said office during said term as though this act had not been passed." The solicitor-general who procured and signed the present indictment was, therefore, acting under authority of the legislature. The indictment was received in court by the presiding judge of the Augusta judicial circuit. It can not be said, therefore, that the acting solicitor-general was a mere usurper, or that his acts in administering the oath to the grand jury, and in procuring and signing the indictment, were void. He was a de facto officer, and as such his title to the office of solicitor-general can not be collaterally attacked. It does not appear that after the transfer of Jenkins county to the Augusta circuit the solicitor-general of that circuit ever discharged the duties of the office in that county, or that any direct action to test the right of the solicitor-general of the Middle circuit to continue to exercise the functions of the office, under the provisions of the act, had ever been taken. It was held by this court as early as the case of *Hinton* v. *Lindsay*, 20 *Ga.* 746, 748, that the acts of a

de facto officer, whether judicial or ministerial, are valid, so far as the public or third persons having an interest in such acts are concerned; and that neither the title to the office nor the legality of the acts of a de facto officer can be collaterally attacked in a proceeding. to which the officer is not a party. It is said in the case just cited that "This doctrine has been established from the earliest period, and repeatedly confirmed by an unbroken current of decisions both in England and in this country." See also, *Pool* v. *Perdue*, 44 *Ga.* 454, 457 (2); *Newman* v. *State*, 101 *Ga.* 534 (28 S. E. 1005). In Constantineau on the De Facto Doctrine, § 429, it is said: "It is a very ancient and salutary principle of the common law, that where a person claims to hold an office, his title shall not come in question in an action or proceeding to which he is not a party; but while he holds the office de facto, his acts and doings therein will be deemed good. This principle is supported alike on grounds of public policy and of justice. On grounds of public policy, because it would be against the interest of the community to allow the acts of de facto officers to be collaterally impeached, by drawing into question the official title of such officers. On grounds of justice, because to judge a man unheard and without an opportunity to defend himself would be contrary to natural equity. For these reasons, the above proposition has received the universal support of a great mass of authorities, only a few of which can conveniently be quoted in this place." See also Mechem on Public Officers, §§ 322, 343, 344; Throop on Public Officers, §§ 631 et seq.; Walker *v.* State, 142 Ala. 32 (38 So. 241). The author we have just quoted from further says (§ 424): "In the United States this question has never created serious difficulty, since the authorities, without a single dissenting voice, have always held that an unconstitutional act affords sufficient color of title to an officer to render his acts valid, until the statute is declared void in a proper proceeding. This was the decision in the great leading case of State *v.* Carroll [38 Conn. 449, 9 Am. R. 409], and in many others. . . So in Clark *v.* Commonwealth [29 Pa. St. 129], the case presented a similar point. The legislature had enacted that the county of Montour should be transferred from one judicial district to another, during the term of office of Judge Jordan; and it was contended that as to that county the judge of the district to which it was transferred could have no jurisdiction, as the act of the

legislature was equivalent to an appointment of a judge for the county without an election, and was, therefore, void under the constitution of Pennsylvania. But in reply to such argument, the court said: 'A very important question upon the constitutional power of the legislature so to alter judicial districts as to transfer a' judge to the courts of certain counties, who was never voted for in those counties, was intended to be raised by this plea; but, unfortunately for the prisoner, it can not be raised in this form. His plea admits that Judge Jordan is a judge de facto; and if it did not admit this, we would take judicial notice of the legislation which placed him in the courts of Montour county, so far as to hold him to be a judge de facto. That legislation is at least colorable title to his office. Can the rights and powers of a judge de facto, with color of title, be questioned in any other form than, by quo warranto, at the suit of the Commonwealth? Assuredly not.' Therefore, the conviction appealed against, which was for murder, was upheld." See also §§ 192 et seq., 74 et seq., of the same work.

From these authorities, we think that where the solicitor-general was acting under the mandate of the legislature as a de facto officer, if the act might be unconstitutional, his title to the office, or his acts as such officer, can not be collaterally attacked in a proceeding to which he is not a party. It follows that the indictment in this case was not void because it was drawn and signed by the solicitor-general of the Middle circuit. What is here said applies as well to the plea in abatement as to the demurrer, the former being upon substantially the same grounds.

3. Complaint is made because the court instructed the jury as follows: "But when you have got the law from the court, and the facts from the witnesses, you are to judge of them; you are to say what are the facts according to the testimony, what is the law according to the charge of the court. You are then to judge of what the verdict ought to be, considering what the law is and what the facts are, and find a verdict accordingly." This charge is not erroneous, under the facts of this case, as being prejudicial to the defendant because it excluded from the jury any consideration of the statement of the defendant. Taken in connection with the general charge, where the court instructed the jury fully and correctly on the subject of the defendant's statement, the excerpt from the charge quoted above will not require a new trial.

4. Error is assigned on the following charge of the court: "Before there can be murder, this malice aforethought must exist. The malice aforethought, the malice prepense, about which I am now charging you, is not used in the ordinary sense of the word deliberate." Malice need not exist for any length of time. If it exists but a moment before the homicide, it is sufficient. *Bailey* v. *State,* 70 *Ga.* 617. When considered in the light of the entire charge, it is evident that the judge was directing the attention of the jury to this rule, and that he was contrasting the term "deliberate malice" with the word "deliberate" when used in the sense of fully and carefully considered, or slowly or leisurely; and when considered with its context, this does not require a new trial.

5. The ninth ground of the motion complains of the following charge: "In considering these defenses to murder, I have been dealing, in this discussion, with one who was free from fault, who was not to blame, one who was acting in fear, in dread, in apprehension; that is the character of person, and that is the character of mind and condition of spirit and heart, in which one may defend against a charge of murder." Taken by itself, this charge is somewhat obscure, but, considered in connection with the context, the excerpt will not require a new trial. What precedes this excerpt as to "the defense of murder" is clearly and fully given, and is as favorable to the defendant as she had a right to expect.

6. Complaint is made of the following charge: "I charge you therefore, as a matter of law, that if Edna Godbee intended and was attempting to shoot and kill and murder Walter Godbee, and that by misadventure the pistol which she held in her hand was not rightly directed toward him, so that the ball miscarried and entered the body of Florence Godbee and killed her, that the crime of murder would be complete." This charge, taken in connection with the general charge, is not erroneous for any reason assigned.

7. The 12th, 13th, and 14th grounds of the motion for a new trial complain that the movant did not have a jury of twelve to try her case, as provided by law, because certain named jurors were not impartial and had prejudged her and entered the jury-box with a fixed, settled, and determined and final opinion to convict her, and had so expressed themselves before entering the jury-box; and that this was unknown to the movant, etc. Affidavits were offered by movant in support of these grounds of the motion; and the State

offered affidavits of the jurors denying the statements attributed to them, and other affidavits as to the good character of the jurors. As repeatedly ruled by this court, the trial judge is the trior of the competency of jurors in such cases, and unless his discretion is manifestly abused it will not be interfered with. The court did not abuse his discretion in this case. *Frank* v. *State,* 141 *Ga.* 247, 283 (80 S. E. 1018, 1034) ; *Hall* v. *State,* 141 *Ga.* 7 (80 S. E. 307).

8. Error is assigned upon the following charge of the court: "If there is any manslaughter in this case at all, it is voluntary manslaughter." It is insisted that this charge is erroneous because it is an expression of opinion on the part of the court that there is no manslaughter in this case. This contention is without merit. It can not be said that the court expressed an opinion that there was no manslaughter in the case, because he had instructed the jury fully on the law of voluntary manslaughter; and if he entertained the opinion that no manslaughter was involved, he would not have charged on that grade of homicide. But he did charge it, which negatives the idea that he did not consider manslaughter in the case. There was no evidence upon which to predicate a charge on involuntary manslaughter. While the charge objected to is inaptly put, it simply and evidently means that there was no involuntary manslaughter in the case, and the court meant to exclude that grade of homicide from consideration.

9. The following charge was quite as favorable as the defendant was entitled to, and she can not complain of it: "I charge you, in that connection, that a person shall not be found guilty of any crime committed by misfortune or accident, where it satisfactorily appears that there was no evil design or intention, or culpable neglect."

10. The remaining assignments of error are without substantial merit. The evidence was sufficient to support the verdict, and the trial judge committed no error in overruling the motion for a new trial.       *Judgment affirmed. All the Justices concur.*